**UNITED STATES DISTRICT COURT:**
**SOUTHERN DISTRICT OF NEW YORK**

---

EDWARD GONZALEZ,

        *Plaintiff,*

      v.

PATIENTS MEDICAL, P.C. d/b/a
SURROGACY4ALL and INDIAN EGG DONORS,
GULATI HOLDINGS, LLC d/b/a
SURROGACY4ALL and INDIAN EGG DONORS,
RASHMI GULATI, MD, and DEEPAK GULATI

        *Defendants.*

Civil Action No.: _____

**VERIFIED COMPLAINT**

Plaintiff Edward Gonzalez, ("Plaintiff") by and through his counsel, Sutton Sachs Meyer PLLC, as and for his Complaint against Defendants Patients Medical, P.C. ("PMPC") d/b/a Surrogacy4All ("S4A") and Indian Egg Donors ("IED"), Gulati Holdings, LLC ("GH") d/b/a S4A and IED (collectively, the "Entity Defendants"), Rashmi Gulati, MD ("RG"), and Deepak Gulati ("DG") (collectively, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.     This action concerns the fraudulent business practices of a pair of alter-ego fertility clinics owned by the same physician and operated out of her medical offices. In February of 2019, Plaintiff sought to actualize his dream of fatherhood. To that end, he contracted with the Entity Defendants to obtain both an egg donor and surrogate. He paid $20,900.00, which included donor eggs, shipment from Ukraine to Ghana, as well as an additional $13,000.00 representing the first of three payments for the quoted $39,000.00 cost of surrogacy. The first payment would be made initially, the second payment when the pregnancy was confirmed, and the final payment at birth.

2.     Unfortunately, after receiving his payment, Defendants took Plaintiff's money and ran, thereby crushing Plaintiff's dream of fatherhood. Defendants led him on for years with promises of progress, apparent setbacks and solutions, and continued assurances of his eventual fatherhood. To this day, Plaintiff has not received any substantive information concerning the status of the surrogacy services he purchased, or whether his dream of fatherhood is even possible. Instead, Defendants pushed responsibility upon a third-party entity apparently located in Ghana with whom Plaintiff has no relationship. Presumably, Defendants outsourced the actual work of surrogacy to a third-world country in order to maximize their profit margins.

3.     To make matters worse, Defendants published confidential medical information belonging to 16 patients, including Plaintiff, to Plaintiff himself. Upon information and belief, this information was disseminated to no fewer than 16 other patients of Defendants.

## JURISDICTION AND VENUE

4.    This Court has diversity jurisdiction upon this action pursuant to 28 U.S.C. § 1332(a)  because Plaintiff and each Defendant are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00

5.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because it is where a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.

6.    The Court has personal jurisdiction over each of the Defendants because they either reside, work, or have transacted business within the state and this action arises out of such work or business. In addition, all agreements referenced herein were entered into in the state of New York.

## PARTIES

7.    Plaintiff is a resident of the state of Florida.

8.    PMPC is a New York corporation that operates an integrative health center, formed in 20024, with a principal place of business located at 1148 5th Avenue, Units 1B and 1C in New York, New York. PMPC operates S4A and IED out of its principal offices.

9.    PMPC is wholly-owned by RG and DG.

10.    S4A is a surrogate birth agency operated as a d/b/a of PMPC and DGA with a principal place of business located at 1148 5th Avenue, Units 1B and 1C in New York, New York.

11.    IED is a surrogate birth agency operated as a d/b/a of PMPC and DGA with a principal place of business located at 1148 5th Avenue, Units 1B and 1C in New York, New York.

12.    Gulati Holdings, LLC d/b/a S4A and IED is a New York limited liability company with a principal place of business located at 1148 5th Avenue, Unit 1B in New York, New York. Gulati Holdings, LLC operates S4A and IED out of its principal offices.

13.     DG is PMPC S4A and IED's Practice Director and is a resident of the state of New York. On July 23, 1992, DG pleaded guilty to charges of securities fraud arising out of an "affinity scheme," a variant of a Ponzi scheme wherein he defrauded consumers of millions of dollars by selling them fraudulent promissory notes that promised a 12% rate of return.

14.     RG is a licensed physician practicing medicine at PMPC. She oversees the operations of PMPC, IED, and S4A and is a resident of the state of New York

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

15.     In 2019 Plaintiff, at the age of 41, decided to finally realize his life-long dream of becoming a father and raising children. To that end, on February 5, 2019, he called Defendants to inquire about arranging a surrogate and spoke to Defendant DG. DG represented that S4A was a legitimate surrogacy agency and that they would provide surrogacy services. He represented that they have "hundreds" of potential egg donors and surrogates in every ethnicity, height, weight, and age. He further represented that Plaintiff would be able to select an egg donor with particular traits, as well as the race of the surrogate. Despite indicating that the surrogate would be in Ghana, he assured Plaintiff that he would be able to select one of Caucasian ancestry.

16.     That same day, DG wrote to Plaintiff confirming their conversation:

Hi Edward:

A pleasure speaking with you this morning, about doing IVF in Ghana using a beautiful local donor that looks like you, and if that does not work, using the remaining embryos created for doing surrogacy in Ghana.

As such, I am enclosing two sets of forms:

1. For IVF using a Caucasian donor in Ghana Cost $12,000 for both IVF and donor costs.

        Please Complete  forms 1, 3, and 4
        Please attach a couple of photos of yourself so we can match you with a donor.

2.    For Surrogacy in Ghana. Cost $39,000 for the surrogacy if the IVF does not work.

Complete Form 2

Please complete the forms and return to me.  On receipt, we can get the process started.

We look forward to helping you have a baby.

(**Exhibit A** hereto)

17.    The $39,000.00 fee was exclusively for surrogacy via the surrogate mother. It was to be paid in three equal installments with the first payment due upon fertilization of the embryo, the second after six months of pregnancy, and the final payment upon the birth of the child.

18.    The eggs and IVF procedure was a separate charge. Plaintiff was initially quoted $20,900.00, which included 10 donor eggs, delivery from Ukraine to Ghana, and delivery of his sperm to Ghana. (Exhibit _ hereto is a true and accurate copy of the October 22, 2019 frozen donor eggs order form).

19.    On February 28, 2019, Plaintiff provided his payment information, requested prospective donor profiles, and indicated that he wanted to begin the process in November of 2019. (*See* **Exhibit B** hereto)

20.     Plaintiff was eventually presented with photographs and information concerning potential egg donor candidates and agreed on a suitable candidate bearing identification number YN 1298.

21.    On April 12, 2019, Mr. Gulati wrote Plaintiff confirming his choice of donor and attaching (a) a profile for donor YN 1298, (b) detailed medical history for donor YN 1298, and (c) forms to order frozen donor eggs. He further indicated that Defendants had 11 frozen eggs to offer and that each cohort of eggs would provide six embryos. (*See id*.).

22.    Mr. Gulati also indicated that the cost would be $16,000.00 for six eggs, including shipping, and that an additional five eggs would cost $10,000.00. (*See id*.).

23.    On April 17, 2019, Mr. Gulati wrote Plaintiff asking if he still wished to reserve frozen eggs from donor YN 1298, stating that the "Egg Bank is holding them in reserve for you, but is going to release them for sale to other buyers by Friday if we don't confirm." (*Id*.)

24.    On May 1, 2019, Mr. Gulati e-mailed Plaintiff asking if he wished to move forward with surrogacy. He stated that "[w]e  have frozen embryos being transported from the IVF clinic in NJ to Ghana in a couple of weeks.. Transportation cost is about $3,000 but we can arrange for you to share the carrier cost with the embryo owner Intended Parent, so will cost you only $1,500." (**Exhibit C** hereto).

25.    Upon information and belief, these eggs/embryos never existed.

26.    Plaintiff responded that same day indicating that he had scheduled his sperm analysis and that he would be traveling to New York in two weeks to review and execute all documents. (*See id*.).

27.    Mr. Gulati responded on May 2, 2019 to notify Plaintiff that if he wanted to avoid the trip to Ghana to deposit sperm, he could provide the sperm sample directly to a clinic in Edison, New Jersey. (*See id*.).

28.    On May 15, 2019, Mr. Gulati followed up with Plaintiff, inquiring about the sperm test and indicating that he could schedule a pickup for the frozen sperm in June. He also attached various forms for Plaintiff to execute in connection with initiating the surrogacy process. Startlingly, the catalogue of prospective surrogates included a profile what clearly appears to be a female child. (**Exhibit D** hereto).

29.     By October 3, 2019, Plaintiff's sperm test results were optimal and accepted by Defendants as suitable for surrogacy. Upon Defendants' request, he utilized the service Sppare.me to freeze, prepare, and ship his sperm sample to Defendants. (**Exhibit E** hereto is a true and accurate copy of an October 3, 2019 confirming Plaintiff's sample was frozen).

30.     On October 23, 2019, Plaintiff officially registered with the Entity Defendants. (**Exhibit F** hereto is a true and accurate copy of the application and proof of payment).

31.     On October 23, 2019, Plaintiff remitted $20,900 to PMPC, which consisted of a $100 application fee, $19,000 for ten eggs, and $1,800 for transporting Plaintiff's sperm to Ghana. (*Id*.)**.**

32.     There was no proof or any indication that either eggs or sperm had been sent to Ghana or anywhere else as promised.

33.     Plaintiff made the first payment of $13,000.00 towards the quoted $39,000.00 cost for surrogacy services to birth.

34.     During the following two years, Defendants informed Plaintiff that they were preparing the surrogate for embryo insertion. When this took an unusual amount of time and Plaintiff inquired as to status, he was told that the machine used for sex selection was broken and needed repair. Puzzlingly, Defendants represented that technicians had to be sent from Germany and due to the ongoing COVID-19 pandemic, were unable to travel. This continued until April of 2021.

35.    On April 29, 2021, nearly two years after last contact, Defendants e-mailed Plaintiff "regarding your possible surrogacy in Ghana!" (**Exhibit G** hereto). Defendants acknowledged the egregious delay and admitted that

> Ghana still does not have the machine up and running. However, the best option in your case, if you would like to move forward, would be to go ahead and create the embryos, insert, and if you get a girl, we can always drop the pregnancy. We realize this isn't the best option, but we also realize that you have a big pause on your case for quite some time now and would love to help you complete your family as time continues to fly.

(*Id.*)

36.    On November 10, 2021, Defendants e-mailed Plaintiff with yet another apparent update. It provided:

> Henna here from Surrogacy4All! I have some great updates for you - your embryos are currently being created and with the guidance of Dr. Rudolph, will be transferred by the end of the month. We will know more soon. I will be in touch!

(**Exhibit H** hereto)

37.    Dr. Rudolph was part of this fraudulent scheme and agreed to continue to misrepresent the facts to Plaintiff.

38.    Plaintiff responded, inquiring as to how many embryos would be created. (**Exhibit I** hereto).

39.    On November 11, 2021, Plaintiff spoke with Henna Khanijou who told him "your embryos have been created," "they are ready for transfer," and "if you wait just a little longer, the process will play out and we will be ready for the surrogacy itself and we can take care of the fees."

40.    Plaintiff inquired to confirm whether Defendants had set aside 10 eggs as promised to which Ms. Khanijou responded "absolutely."

41.     Defendants' affirmative representation that he had 10 eggs and that the embryos were created was made explicitly as part of Defendants' plan to defraud Plaintiff.

42.     Defendants then replied to Plaintiff's e-mail, attaching a supposed "donor profile" stating

> Just to confirm, the embryos are currently being created. Once they are created and I receive an update, I will absolutely send that update over to you :)

(*Id*.)

43.     Upon information and belief, the donor profile was fabricated and no embryos were ever created. Defendants' affirmative provision of a fake donor profile was made explicitly as part of Defendants' plan to defraud Plaintiff and to induce him into continuing to patronize the business.

44.     At this point, Defendants went dark and did not communicate with Plaintiff until April of 2022.

45.     On April 25, 2022, Defendants wrote Plaintiff with yet another knowingly false "update" concerning his surrogacy:

> This email is an update on the status of your surrogacy.
>
> We had a Zoom conference call with the staff at RumaIVF.com in Ghana last week on the status.
>
> This is summarized below:
>
> a.  Your sperm, and Ukrainian oocytes from KA 0798,  were shipped in January 2021 to Ghana.
>
> As per your request, we have now started the surrogacy process for you.
>
> b. They are currently screening surrogates for you.  This process takes about two months.
>
> c.  Preparation time for surrogates depending on the date of their period is about 2 to  6 weeks after that.
>
> d.  So we are looking realistically at June-end for implantation of your embryos in the surrogate.

We are trying for earlier if possible.

e.  We have noted your preference is for a twin pregnancy, with both twins being a male baby. .  Embryo creation and  Sex selection have been scheduled for you.

Feel free to contact Dr. Eva or me if you have any questions.

(**Exhibit J** hereto)

46.     The alleged Zoom conference call between and among Defendants was made for the purpose of further defrauding Plaintiff with respect to the timeline of the surrogacy.

47.     At this point, Plaintiff was starting to doubt Defendants' veracity. They had initially informed him (a) that the embryos were created in November of 2021, (b) the sperm and oocytes were shipped over a year earlier in January of 2021, and (c) that the surrogacy process was also starting in April of 2022. Defendants then informed him that they would provide a "pregnancy by June 2022."

48.     Plaintiff repeatedly attempted to contact Defendants from April of 2022 until October of 2022 with no success. Finally, out of the blue, on October 20, 2022, Defendants e-mailed Plaintiff with yet another "update" as follows:

> ***Good News!***
>
> We had a nice chat with Dr. Rudolph yesterday and he has indicated that he has 16 surrogates in the pipeline who are currently being screened. Of course, as we know, the screening process is rigorous in Ghana. But, we expect that a good number will pass through screening shortly.
>
> This being said, his intention is that all pending surrogacy cases in Ghana, including yours, will be transferred by the end of December.
>
> As we receive any other updates, we shall keep you posted. In the meantime, keep the good aura and good thoughts! Stay safe and stay healthy!

(**Exhibit K** hereto)

49. Upon information and belief, Dr. Rudolph was part of this scheme to defraud Plaintiff and conspired with Defendants to continue to defraud Plaintiff. Indeed, by 2024, two years later, no surrogates were screened or embryos made for Plaintiff's case.

50. Everything Defendants had expressly represented to Plaintiff up until this time was false and made for the express purpose of giving Plaintiff the false impression that he was purchasing a legitimate service. Defendants had represented that it was screening surrogates in April of 2022 and then in October of 2022 represented that sixteen potential surrogates were being screened. They also promised that his surrogacy case would be completed by December 2022. This was false and Defendants knew it to be so.

51. Indeed, Plaintiff pushed back on these fraudulent misrepresentations:

Thank you very much for the update, but this is not what you told me; **you said to me that the surrogate mother would be ready by the end of September, not December; this is ridiculous; from June 2022, you say that the surrogate is prepared, and now I need to wait By December, this process should be simple, not complicated**. Right now, I'm stressed and depressed because of you. I don't want to start a legal process, but this is ridiculous, the number of times they have changed my process.

Make sure Dee gets back to me as soon as possible.

(**Exhibit L** hereto) (emphasis added)

52. The next day, on October 21, 2022, Defendants tried to cover their tracks:

We have two surrogates being prepared as we speak for transfer in the next two weeks.

One of these had been reserved for you with the surrogate preparation having started in September as promised.

Henna is being conservative in her projections in case the surrogate has any medical issues prior to final testing done prior to embryo insertion, and we have to replace her with one of the other 16 surrogates in various stages of selection and preparation.

If that happens then the process will be delayed till December.

We will pray things will go smoothly.

Hope that helps.

(*Id*.)

53.    This e-mail from DG demonstrated that he and Henna were acting in concert to misrepresent the status of the surrogacy to Plaintiff. Indeed, neither the referenced two surrogates nor the transfer ever existed or transpired. DG made this false representation with the intention of deceiving Plaintiff. The timeline of events continuing to the present day bears this out.

54.    Unsurprisingly, there was no follow up. Plaintiff wrote Defendants on November 16, 2022 and December 5, 2022 seeking an update. He also continued to call Defendants with no response. Finally, on December 6, 2022 Plaintiff got through via phone and spoke with Henna Khanijou, inquiring as to an update and demanding a refund. He was told that "no refunds are possible" and that Ms. Khanijou was "his representative" and his "agent in this process to protect and guide you."

55.    In response, Plaintiff was copied on an e-mail to Dee Gulati wherein Henna Khanijou admits to being Plaintiff's agent and representative:

> Hi Dee,
>
> Edward called the office and expressed that he is upset with not receiving an update on transfers that were to occur for his embryos in September.
>
> I have put the ask out to Ghana once again. I will be following up with their team.
>
> I expressed to Edward that being his representative and his agent, this is what I can do. He was concerned that we invoice him, but give him no results. I do ask you to please address his concerns.

(**Exhibit M** hereto)

56.    Again, Henna's representation that she was Plaintiff's "representative and [] agent" was knowingly false and made in furtherance of Defendants' scheme to string Plaintiff on for years, presumably past the statute of limitations, so that they could steal his money and not provide him with a surrogacy.

57.    On December 8, 2022, Defendants responded indicating there was no update and that they would forward Plaintiff's request to a third-party, "Christobel at RumaIVF," with whom Plaintiff was not familiar. (*See* **Exhibit N** hereto).

58.    Plaintiff continued to call and e-mail Defendants through December 2022 and into January 2023 until January 13, 2023, when he received the following response:

Happy New Year! We are truly hoping that 2023 is going to be OUR year together!

To provide you with an update on the current movement in Ghana:

1. Our team in Ghana is extremely actively recruiting surrogates in Ghana. However, the current pass rate of the *initial screening* is only 10% right now. The team has really tightened its requirements to ensure that all of our clients lead to success.

2. They have appointed a new surrogate coordinator, Christabel, and our nurse coordinator, Patricia, to our team. We are excited to have them on board to provide us with updates. We are hoping to have you matched ASAP with an overly qualified surrogate.

3. The team in Ghana has also partnered with a Surrogate Recruiting Agency in Accra to help move along the rigorous recruitment process. This will allow us to hopefully move quicker with surrogate screenings, which on average here in the USA takes up to 4 months PER surrogate, this is after her legal paperwork has been cleared and accepted by the clinic.

4. In the meantime, your specimen provided is stored safely in cryostorage at the labs until embryo creation and transfer are done simultaneously.

Although this is, in fact, a long process, we want to assure you that we are here as your advocates to ensure that we do everything in our power, collectively as a team with our hospital in Ghana, to complete your family.

We hope you are keeping well, safe, and healthy!

Feel free to reach out to me with any questions.

(**Exhibit O** hereto)

59.    Once again, Defendants continued to defraud Plaintiff. They went from initially having sixteen surrogates in 2021, to actively screening surrogates in 2022 to "actively recruiting"

surrogates in 2023, also falsely indicating that the screening procedures have been tightened to buy them more time to lead Plaintiff on. Each and every communication from Defendants, including the above was false, Defendants knew it was false, and was made for the sole purpose of leading Plaintiff on to presumably continue to defraud him.

60.     Realizing this, Plaintiff confronted Defendants in an attempt to ascertain what was really going on. To this end, on January 17, 2023, he wrote

> Happy New Year, please call me back; I need clarification regarding your email; in the previous email, Dee mentioned that the surrogate was already found for my case. By November, he says he has two surrogate mothers available, and one will be for me; if, for any reason, this surrogate does not pass the test will be 12 surrogates available in December 2022. Is my embryo already in a surrogate mother?
>
> Again, Please call me back.

(**Exhibit P** hereto)

61.     Plaintiff did not hear back from Defendants until July 27, 2023, at which time, Defendants indicated that they had a call with a Dr. Rudolph on July 28, 2023, and promised an update. (**Exhibit Q** hereto).

62.     On August 1 and 4, 2023, Plaintiff inquired as to the call with Dr. Rudolph, and asked for a meeting with Dr. Rudolph. (**Exhibit R** hereto). In an August 4, 2023 response, Defendants represented that they

> just got off of the zoom call with dr Rudolph and his team
>
> he has put you in for September transfer per our request. I am setting up your meeting with him for next Friday [.]

(*Id*.)

63.     Once again, Defendants' promises were broken and Plaintiff was left having spent an enormous amount of money with nothing in return. Despite constant attempts to obtain any update, Plaintiff had begun to lose hope.

64.     On February 16, 2024, Defendants reached out with another "update," stating

I hope this email finds you well. Thank you for your patience as we continue to work towards the Surrogacy process in Ghana. **We are working diligently with the surrogate recruitment team in Ghana to have many surrogates screened in the upcoming few weeks.**

**I do have some good news.  Due to these efforts, the team in Ghana has three new surrogates ready for transfer, with many more on the way.**

Hopefully, we will be in a position to expedite your surrogacy shortly.

Before your transfer, we will be scheduling a personal Zoom call with Dr. Rudolph where he will be personally chatting with you to discuss your surrogacy and next steps.

I will inform you as this time gets closer. Please see attached a document for your review sent by Dr. Rudolph. Please gather all questions before this call in the next few weeks.

(**Exhibit S** hereto) (emphasis added)

65.     Predictably, Defendants' representations were knowingly false and Plaintiff did not hear from them. A month later, on March 11,  2024, Plaintiff requested another update. Defendants responded again making false promises:

We are still screening GC's for your transfer. I see that you are number two on the next batch of three.

Will hopefully have a good update soon!

(**Exhibit T** hereto)

66.     Again, no update was provided. On April 3, 2024, Plaintiff requested another update. Defendants responded, seeking to schedule a meeting. (**Exhibit U** hereto).

67.    On April 16, Plaintiff yet again inquired as to status:

We have a problem and I need clarification asap, before seeking legal advice. Firstly, I have been told that out of the 10 eggs I purchased, only 4 embryos have been created, of which 2 are male and 2 are female. Mr. Dee guaranteed the attainment of my future child if I bought the 10 eggs instead of 6. I have never requested that 2 embryos be transferred at the same time, but I have been informed that in the first attempt and without my authorization, they placed 2 embryos, one female and one male. After several calls and emails, in June of last year I was informed that these embryos miscarried at 16 days, and that they would start the process again. Now they are giving me completely different information. Where are the 4 embryos created? Why do they say I only have 1 embryo available and that it is female? My patience is wearing thin.

(**Exhibit V** hereto)

68.    As indicated, Defendants' disclosures of how many embryos were created and/or available were knowingly false.

69.    Plaintiff was inadvertently copied on an internal email between and among Defendants:

Hello Mr. Gulati and All,

The above is a forwarded email sent to **Surrogacy4All** about the transfer done for **Edward Gonzales** on the **1st March, 2023** which was Negative and the feedback was communicated to be delivered to him

Before the above transfer, we had already done a **PGT-A** testing for him. Below screenshot is also details shared with Surrogacy4All on Edward Gonzales' treatment with us so far and this update was shared last year to have a feedback communicated to us on the way forward

| 6. | Edward Gonzales | 29-Nov-19 | 01-Mar-23 | **15-Mar-23** | **Negative** | 1 embryo stored  1 vial of sperm | **Abnormal embryo (1) stored** | IP to decide on what to do next |
|----|----|----|----|----|----|----|----|----|

Edward Gonzales had his gametes sent to RUMA Hospital in 2019 and since then, we have provided services for him which includes;

• PGT-A

• Embryo Transfer (Negative result)

All these information has already been communicated and we would appreciate if it is acknowledged as so, rather than the opposite as it's being portrayed in the emails forwarded to us from Mr Gonzales

We kindly ask that he excercise patience and provide us with feedback on the screenshoted update above on the way forward

(**Exhibit W** hereto)

70.    Another contemporaneous e-mail, apparently from Dr. Rudolph, stated in response:

It appears surrogacy4all is evading responsibility of passing information to IPs and rather asking them to contact me directly.  Please this should cease.  Mr Gonzales treatments have been done as indicated by e-mails from Christabel to Surrogacy4all.

He Gonzales should let us know the way forward because he has one female embryo with us and our understanding is that he didn't want a female embryo transferred.

That is why I was surprised when Mr Gonzales seemed to imply that nothing has been done since 2019.

(*Id*.)

71.    Apparently, Defendants had been in possession of more information than they let on and purposefully refused to inform Plaintiff.

72.    At this point, Defendants' internal team appeared to have a significant conflict in which certain departments accused others of fraud and acknowledged that Plaintiff was, at best, not given the benefit of the bargain, and at worst, defrauded.

73.    While Plaintiff did not have the full context of this dispute, he was copied on an April 16, 2024 e-mail between and among Defendants that stated:

Hello Dr. Rudolph and Team,

Thank you for your emails. **I request you ALL to read this email in its entirety.**

**The IP is also CC'ed in this email and I request RUMA IVF to be mindful.**

As an authorized employee and representative of Surrogacy4All, I would like to address all of these allegations that are being made. Furthermore, I would like to stress that we cannot continue operating in this manner. **TO ALL THAT ARE CC'ED ON THIS EMAIL,** I request **PROFESSIONALISM, EMPATHY, AND PATIENCE.** We are a licensed and well-established Surrogacy Agency in the USA.

Your mannerisms and emails are going against all of our policies and methods of operations.

As for Gonzales, I am merely going to lay out the facts below so that all members - IP, RUMA IVF, and Surrogacy4All - can take note:

1. We paid RUMA IVF for Edward Gonzales in November 2019. 10 oocytes and 2 vials of sperm were sent to your institution. Please see the below confirmation:

---

**henna@surrogacy4all.com**                              11/29/2019 5:54 PM    🔖

**To** rkadageba3147@gmail.com,  josephmuss6@gmail.com   and 4 others

Reply    Reply all    Forward    Delete    Add to Safe Senders

Add to Blocked Senders    ☰

---

📎  1 attachment  ▾    View    Present    Download    Save to Drive

Edward…Application.pdf (2.6 MB)

---

Hello RUMA IVF team!

I wanted to reconfirm our shipment that you have received today.
Mr. Edward Gonzales (application attached) - Sperm
10 donor eggs for KA 0798

---

2. 5/12/2021 @3:59pm - An email was sent as below:

3. On Thu, Dec 23, 2021 5:06 pm I sent an email to Christabel when she first joined RUMA IVF updating you all about the current cases. Please see below where Mr. Gonzales' case is listed:

**3. Edward Gonzales**
**PLEASE HOLD ON THIS CASE.**
Edward wants to have only two boys. He wants to hold until Ghana is able to do sex selection. Dr. Rudolph, please feel free to outsource this procedure if there is another hospital in Ghana that can perhaps create the embryos, conduct sex selection, and then we can proceed with surrogacy with RUMA? Unsure if this is possible, but just a thought
Dee and I had
Twins - Two boys

3. In 2022, Embryos were created and were PGT tested. **Report is attached to this email.**

Sent: Thu, Dec 23, 2021 5:06 pm
Subject: Re: RUMA IVF - Christabel

Hey Christabel!

Nice to e-meet you! :) My name is Henna and I am the coordinator here
at Surrogacy4All! I look forward to working closely with you to help
complete many intended parents' families! So glad to know that we will
be working together on this endeavor. We are blessed to be working
with Dr. Rudolph and the rest of his team on this as well :)

Our spreadsheet is attached for IP's that currently have their specimens
in Ghana. We have many more who are on their way as 2022 starts.
They are looking forward to it as well.

I am also attaching our order of preference (people who have been
waiting longer, let's please try to get their transfer's done first:))

4. Gonzales, Edward (Sex Selection - looking for two boys)

4. Mr. Gonzales sent an email for the PGT-A Form, and this was returned to you on 9/16/2022 at 6:02 PM. **Please see his signature on the form that is attached.**

5. Even after all of the above, we receive this email, as you have forwarded:

GONZALES EDWARD
Date of Embryo Transfer: 1st March, 2023
Number of Embryo Transfer: 2
Pregnancy Test: Yet to be done

6. Since this time, we have been patiently awaiting surrogate recruitment as indicated by Dr. Rudolph in the following email, that recruitment takes time:

7. In February 2024, We discussed the PDF's that were sent back and forth regarding upcoming treatments and other cases which did not succeed in Ghana. Please note that Mr. Gonzales' name is on the spreadsheet for upcoming cases:



8. I have repetitively asked for updates on Gonzales, why is this coming to our attention now? In my most recent question to Christabel regarding Gonzales on April 9, 2024, she mentioned that you would all get back to me. Your response directly to Gonzales is going against my conversation with Christabel. To my question to Christabel, there was an indication that there is **NO LONGER ANY SPECIMENS FROZEN** for Mr. Gonzales. So, I think we are all a little misled here. I once again, ask for clarification immediately. I was awaiting this confirmation before mentioning anything to Mr. Gonzales, but now I request you all to please provide him feedback directly in this email so that we receive this information together.

9. I have sent an inventory request sheet to you all numerous times, most recently on February 2, 2024, and again on February 19, 2024 - this is also once again unanswered. Please see the screenshot below:



10. Overall, every piece of information that has been provided by RUMA IVF has been sent amicably and as received to Mr. Gonzales. He has been very patient and has been waiting for a second transfer, and we have continuously indicated to your

team that we received the negative reports. Each time we have requested updates, we have been informed that surrogate recruitment is pending.

11. In the sheet that you have specified Dr. Rudolph, your team has written that he has nothing stored, but according to his PGT-A report, you should have 1 embryo stored. Please verify.

12. At this time, to my conclusion, this was received in error. **However, rather than jumping down our throats, an email to verify would have been greatly appreciated. This is what I mean by professionalism and mannerism. Mr. Gonzales should not have been on this list** as per my knowledge, he has one embryo left in Ghana.

13. I am happy to rectify this once you can confirm to us, and provide us with proof, **as to what is in storage for Mr. Gonzales.** We have received too many variations at this point, and **I await this response.**

1**4**. Once you provide us with the inventory update for Mr. Gonzales, we will reconvene as **he requested a second transfer eons ago and I have been requesting a second transfer for Mr. Gonzales to your institution for many months.**

 (**Exhibit V** hereto) (emphasis in original)

74.    Plaintiff was copied on a response to this message from <u>prexpert@gmail.com</u> that

stated

Please if we want to stretch on professionalism, then I think we all have to sit and check ourselves

I have countlessly mentioned how dealing directly with IPs can create problems both via WhatsApp and emails

If you ask IPs to reach out to me or RUMA Hospital directly, are you not breaking the privacy code yourself?

All the information shared today were supposed to be shared directly with the IPs months ago and not them reaching out directly to get information from me. I go through the hassle of compiling all these information to ensure we have a smooth working relationship and I can't count the number on times IPs have reached out to me directly attacking me and making it look like I'm not doing my job as Edward Gonzales portrayed originally before changing his statements when I sent him proof

When you asked about his status on WhatsApp earlier this week, I asked that you hold on till I get the accurate feedback for you only to find him sending threatening emails and texts to us

Please if we want to ensure a good working relationship, communication should be very CLEAR, PRECISE and through the right medium

There was no way of letting Edward Gonzales know we had transferred an embryo, refunded his money and requested the way forward if I had not attached the document which is zipped and can't be picked out single and you were all in copy with no attempt of trying to say something to your client when he kept sending all the emails he sent

Why were all these information not communicated to Edward Gonzales in the first place? Why do IPs have to constantly reach out to me directly asking for feedback when I give them to you to be communicated and go to the extent of even attacking me verbally?

We mentioned no gametes to be shipped and recently, we had an information from Larry about gametes being shipped

We never get a smooth conversation with Surrogacy4all, you keep violating what we both need to agree on and later blame us

These actions are very unfair and unhealthy!

(*Id.*)

75.     Defendants responded that same day:

We are ignoring the problem with the IP CC'ed in this email.

**I need inventory on this embryo IMMEDIATELY.**

At this time, this is all I require. I await your response.

(*Id.*) (emphasis in original)

76.     The next day, on April 17, 2024, [prexpert4@gmail.com](mailto:prexpert4@gmail.com) responded:

We've shared all the details with you already, many times, and not just on Edward Gonzales but all the other clients

What other inventory are you requesting for?

Let me know

(*Id.*)

77.     Defendants responded passing the buck to this unknown third party that Plaintiff had never heard of, dealt with, paid or engaged:

We will await confirmation on Gonzeles' embryo inventory as per your message to me on April 9th.

Until then, if Mr. Gonzales has any more questions, he can direct them to you as he is also present in this entire conversation.

(*Id.*)

78.     Rather than take responsibility for taking money from Plaintiff and refusing to provide services, Defendants pawned him off on an unknown third party.

79.     That same day, on April 16, 2024, Plaintiff received an e-mail from rumahospital2014@gmail.com purporting to explain the situation and admitting that this third-party refunded money paid by Plaintiff to Defendants that Defendants never returned to Plaintiff or informed him of the refund:

> Mr Gonzales,
>
> We sent you a PGT - A form to which you signed and we have a copy here. Let me breakdown what was in the PGT-A consent form you signed to you;
>
> •     Out of the 10 eggs fertilized, 4 embryos were obtained and tested by PGT-A (1st point)
>
> •     Per PGT-A test results, 2 embryos were found to be normal (1 normal male, 1 normal female) whilst the remaining were found to be abnormal (2 abnormal females; of which 1 may be considered for transfer after discussion with IP about possible implication, hence we asking for your feedback through Surrogacy4All in an already shared document)
>
> •     You signed and indicated you wanted a male and that we should freeze the remaining embryo(s)
>
> Attached is an image on my discussion with Henna indicating that we should go ahead with your transfer on the **14th February, 2023** to which we adhered to and transferred your embryos on the 1st March, 2023 and this was communicated to Surrogacy4All **(because Surrogacy4All acts as "mouthpiece" for you the IPS, we do not take direct orders from IPs per our contract with them and they gave us the go ahead to make the transfer)** The result was Negative and this was shared with Surrogacy4All again as indicated in my previous email
>
> **[HIPAA INFORMATION OMITTED]**
>
> In this above screenshot, Surrogacy4All asked us to refund all the money for negative cases to which we did in December 2023, and your name can be found in the list as IPs we've refunded money (No. 16), yet we are still freezing your embryo at a cost even though we've constantly requested on what to do with the embryo we have here

I will suggest Surrogacy4All to acknowledge all these communications and deal directly with you (per our contract with them) as we have given them all the necessary feedbacks with you participating by signing the consent form sent to you

In your previous email, you portrayed we've done nothing on your procedure since 2019 which is false and I've shared all backing documentations
We urge this communication error to be corrected please

 (**Exhibit W** hereto) (emphasis in original)

80.     This e-mail makes clear that Defendants were fraudulently concealing the status of Plaintiff's surrogacy.

81.     This e-mail also contained HIPAA-protected information belonging to Plaintiff and twenty-one additional people. Upon information and belief, this information was also sent to the twenty-one other individuals listed.

82.     Defendants behavior over the course of five years, having taken over $20,000.00 from Plaintiff, not providing the services, continuing to objectively and intentionally mislead him as to the status of his surrogacy was devastating to him. At the beginning of this journey, Plaintiff was 41 years old. He is now 46 and the window for him to realize his goal of fatherhood is quickly closing. As a result of this five-year saga, Plaintiff has had tremendous anxiety and depression. He has been in therapy for the emotional damage caused by Defendants and has been prescribed anti-anxiety and anti-depressant medications.

83.     Upon information and belief, this is the manner in which Defendants have conducted business and have treated hundreds of other consumers.

84.     Defendants' practices with respect to surrogacy, screening surrogates and effectively providing the advertised services are suspect. In this regard, they solicit surrogates from anonymous online message boards. Specifically, they have created the subreddit

www.reddit.com/r/surrogacy4all/ on which they have posted no fewer than one advertisement seeking a surrogate. (**Exhibit X** hereto).

85.    Defendants also solicit surrogates from www.Craigslist.org (**Exhibit Y** hereto).

86.    To this date, Plaintiff has not been able to fulfil his dream of fatherhood and Defendants have continued to deceive and defraud him, wasting his time and money.

## CLAIMS FOR RELIEF

## FIRST CLAIM

(New York General Business Law §§ 349 & 350 against all defendants)

87.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein at length.

88.    Defendants publicly offer surrogacy services to consumers in the public.

89.    Defendants' advertising includes representations such as

a.    "FDA Registered Fully Licensed and Insured"

b.    "Physician Owned and Managed"

c.    "Competitive Surrogacy Costs Worldwide"

d.    "Success Rates 90% for Surrogacy"

e.    Cost: $49,000  + waiting time for surrogate: 1 year or so Baby is born with your citizenship.

90.    Defendants consistently and knowing lied to Plaintiff about the nature of the services they provided, where they were provided, and whether or not they were provided by an unknown third party, the status of Plaintiff's surrogacy, the timeline in which it would happen, and that they would be providing Plaintiff with the means to fatherhood.

91.    Defendants' conduct in consistently and knowingly providing false information was misleading, deceptive, unlawful, fraudulent and unfair because it gave Plaintiff the impression that the services he paid for were legitimate, that Defendants operated a legitimate business, and that he would get what he paid for.

92.    Defendants misrepresented the quality and legitimacy of their surrogacy services.

93.    Defendants' acts and omissions are not unique to the parties and have a broader impact on the public.

94.    Plaintiff was a public consumer of Defendants' services.

95.    Plaintiff relied on Defendants' statements, omissions, and representations and Defendants knew their statements were false, specifically in continuing to engage the Defendants with the hopes of securing a surrogate to bear his children.

96.    Plaintiff would not have engaged Defendants if the true facts had been known, suffering damages.

## SECOND CLAIM
(Breach of Contract)

97.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein at length.

98.    Plaintiff and Defendants entered into a contract on October 23, 2019 for surrogacy and IVF services.

99.    Plaintiff paid $33,900.00 in consideration for such services.

100.    Defendants have breached the agreement by failing to provide any of the promised services and to accurately apprise Plaintiff of the same.

101.    As a result of Defendants' breach, Plaintiff has been damaged in the amount of $20,900.00, and has lost the opportunity of five years of fatherhood. Plaintiff continues to suffer damages as a result of this breach.

## THIRD CLAIM

(Unjust Enrichment)

102.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein at length.

103.    Plaintiff conferred a benefit on Defendants by providing them with $33,500.00.

104.    Defendant did not provide any goods or services in return.

105.    Defendants have been wrongly enriched from the benefit conferred upon them by Plaintiff.

106.    Defendants' wrongful enrichment is at Plaintiff's expense, as Defendants, despite repeated written demands have failed to pay for Plaintiff's damages.

107.    Equity and justice require that Defendants not be permitted to retain the benefit conferred by Plaintiff without compensating Plaintiff for his damages and returning the amount paid.

108.    As a direct and foreseeable result of Defendants' wrongful conduct, Plaintiff has been damaged in an amount to be determined at trial.

**FOURTH CLAIM**

(Breach of Duty of Good Faith and Fair Dealing)

109.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein at length.

110.    Plaintiff and Defendants were parties to a contract.

111.    Defendants intentionally delayed and/or refused to perform or timely perform their obligations under the contract including, *inter alia*, providing Plaintiff with donor eggs, processing his sperm, inseminating the referenced eggs, or informing him that they would not be performing any of the referenced obligations themselves.

112.    These acts and omissions were done to intentionally delay performance under the contract because Defendants were not ultimately able to perform.

113.    These acts and omissions were done to  intentionally prevent Plaintiff from obtaining adequate information such that he could find surrogacy services elsewhere.

114.    These acts and omissions were done to intentionally deprive Plaintiff of the benefits of his bargain.

115.    As a result, Plaintiff has been damaged in an amount to be determined at trial.

**FIFTH CLAIM**

(Common Law Fraud)

116.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein at length.

117.    Defendants consistently and knowing lied to Plaintiff about the nature of the services they provided, where they were provided, and whether or not they were provided by an unknown third party, the status of Plaintiff's surrogacy, the timeline in which it would happen, and

that they would be providing Plaintiff with the means to fatherhood. In addition, Defendants misrepresented the status of the surrogacy, falsely averred that they had found a surrogate, and intentionally failed to disclose to Plaintiff that the eggs that he had purchased were destroyed. Each of these statements are detailed within this pleading and its attachments.

118.    Defendants' intentionally false statements were entirely inconsistent with each other

119.    Defendants' conduct in consistently and knowingly providing false information was intentional and made to give Plaintiff the impression that the services he paid for were legitimate, that Defendants operated a legitimate business, and that he would get what he paid for.

120.    Defendants misrepresented the quality and legitimacy of their surrogacy services.

121.    Defendants' acts and omissions are not unique to the parties and have a broader impact on the public.

122.    Plaintiff was a public consumer of Defendants' services.

123.    Plaintiff relied on Defendants' statements, omissions, and representations and Defendants knew their statements were false, specifically in continuing to engage the Defendants with the hopes of securing a surrogate to bear his children.

124.    Alternatively, Defendants are liable for their agent's misrepresentations whereby the Individual Defendants were acting with either implied or express authority, and Plaintiff relied on those misrepresentations in connection with entering into the contract.

125.    Plaintiff would not have engaged Defendants if the true facts had been known, suffering damages.

## SIXTH CLAIM

(Civil Conspiracy to Commit Common Law Fraud)

126.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein at length.

127.    Defendants fraudulently misrepresented virtually every fact concerning their provision of surrogacy services to Plaintiff and the status thereof, including the manner in which surrogacy would be implemented, the existence and number of eggs and embryos, the loss of embryos, the failure to obtain a surrogate despite promises that a surrogate had been obtained, and what was done to his sperm.

128.    Given the written and oral communications detailed in this pleading, Defendants RG, DG (in their individual capacity and on behalf of PMPC, S4A, IED and DGA) and Henna Khanijou met, spoke and exchanged e-mails and agreed and understood between and among themselves, that the representations they made to Plaintiff were false. As detailed above, the specific written and oral representations made to Plaintiff show that Defendants had a plan and took steps to act upon it, *i.e.*, to defraud Plaintiff.

129.    The plan and acts of deceiving and defrauding Plaintiff occurred over the span of five years, continuing to the present day.

130.    As a result, Plaintiff has been damaged in an amount to be determined at trial.

## SEVENTH CLAIM

(Unjust Enrichment)

131.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein at length.

132.    Defendants received the benefit of Plaintiff's Payments for surrogacy services.

133.    Defendants' benefit was at Plaintiff's direct expense as they had received payment and not provided any services.

134.    It would be against equity and good conscience to permit Defendants to retain the funds paid without having provided the requisite services.

135.    As a result, Plaintiff has been damaged.

## EIGHTH CLAIM

(CPLR 4504 Breach of Physician-Patient Confidentiality Against PMPC and RG)

136.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein at length.

137.    PMPC operates a medical practice.

138.    RG is a licensed physician.

139.    S4A and IED are alter egos of PMPC. They operate out of the same office, with the same staff, there is no material distinction between any of the parties.

140.    All payments made for S4A and IED services are made to PMPC. Indeed, Plaintiff remitted the aforementioned payments directly to PMPC. (**Exhibit F** hereto).

141.    Surrogacy services are essentially medical in nature.

142.    By virtue of Plaintiff procuring surrogacy services, a physician-patient relationship existed between Plaintiff and each of RG and PMPC.

143.    Through the course of providing services, RG and PMPC obtained Plaintiff's confidential medical information relating to Plaintiff's surrogacy and, upon information and belief, medical information such as sperm analysis.

144.    On April 16, 2024, PMPC and RG caused confidential HIPAA-protected medical information to be disseminated to Plaintiff via e-mail. This disclosure contained the confidential medical information of no fewer than twenty-one other patients.

145.    Upon information and belief, given the format of the disclosure, Plaintiff's confidential medical information was disseminated to each of the twenty-one other patients. The medical information disclosed identified Plaintiff by name.

146.    The other patients were known to Plaintiff and not connected to his medical treatment.

147.    Plaintiff did not consent to this disclosure.

148.    As a result, Plaintiff suffered pecuniary and emotional distress damages in an amount to be determined at trial.

## NINTH CLAIM

(Constructive Fraud in Contract)

149.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein at length.

150.    Plaintiff and Defendants shared a confidential relationship wherein Defendants operated a medical and surrogacy clinic such that Plaintiff trusted Defendants, Defendants had superior knowledge of the surrogacy process, and Plaintiff was ignorant of same and dependent on Defendants.

151.    Plaintiff and Defendants were parties to a contract.

152.    Defendant made multiple misrepresentation of facts in connection with the performance (or lack thereof) of the contract.

153. All of the aforementioned misrepresentations were untrue or made with reckless disregard for the truth.

154. As a result, Plaintiff was damaged.

## **DEMAND FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

a) Compensatory, punitive, pecuniary, and non-pecuniary damages in an amount to be determined at trial but in no event less than $100,000.00;

b) Pre- and post-judgment interest;

c) Fees, costs, and disbursements; and

d) Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands trial by jury on all available counts.

**SUTTON SACHS MEYER PLLC**

/s/ Ali R. Jaffery, Esq.
Ali R. Jaffery, Esq.
14 Penn Plaza, Suite 1315
New York, NY 10122
t. (212) 480-4357
e. Ali@ssm.law

## **VERIFICATION**

STATE OF ___Florida___ )

) SS.:

COUNTY OF ___Miami-Dade___ )

     EDWARD GONZALEZ, being duly sworn, hereby states as follows under the penalties of perjury.

     I am the Plaintiff in the within action. As such, I have read the foregoing Verified Complaint. I know the contents thereof to be true to my personal knowledge, except as to those matters contained therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true. My belief as to all matters not stated upon my own knowledge, is based upon my personal knowledge of the facts and circumstances set forth herein and the documents, records, information, and other materials obtained from investigation conducted with regard to same.



_____

EDWARD GONZALEZ

SWORN TO BEFORE ME THIS

___22nd___ day of ___October___, 2024

_____

NOTARY PUBLIC

BRENDA AMADOR-DELANEY
Notary Public, State of Florida
Commission# HH 256056
My comm. expires April 21, 2026

County/City of ___Miami-Dade___
Commonwealth/State of ___Florida___
   The foregoing instrument was acknowledged before
me this ___22nd___ day of ___October___, 2024
by ___Edward Gonzalez___
   (name of person seeking acknowledgement)

Notary _____
My Comm. Expires: ___04/21/2026___